**NOT FOR CITATION**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JUAN NAVAERETTE,

                Petitioner,

  vs.

J. BROWN, Warden,

                Respondent.

_____/

No. C 04-4457 PJH (PR)

**ORDER DENYING HABEAS PETITION**

Petitioner, a California prisoner currently incarcerated at San Quentin State Prison, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the 2003 decision of the Board of Parole Hearings ("Board," formerly the Board of Prison Terms) denying him parole. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons set forth below, the petition is denied.

**BACKGROUND**

The Board summarized the facts of the commitment offense as follows:

> On September 27th, 1980, at approximately 4:45 p.m., Billy Welch was crossing the street when he heard what sounded like two explosions. Welch turned around and saw John Navaerette and Neal Wesley forty feet away, standing face to face about four feet apart with Navaerette holding a revolver in his right hand. Welch saw Navaerette fire the revolver three or four times at Wesley as he stumbled and ducked attempting to get away. Navaerette ran east on 15th street past a liquor store where the store clerk John Mushi, who had seen the shooting, called the Oakland Police Department. Neither Welch nor Mushi saw Wesley display any weapon or touch Navaerette before or during the shooting. Navaerette was arrested six minutes later by Officer Lewis who had heard a broadcast of the description of Navaerette. Wesley died at Alameda County hospital at approximately 5:15 p.m. as a result of a gunshot wound to the chest. Wesley had a blood alcohol level of 0.21, and he had measurable amounts of Morphine in his system. A balloon of heroin was recovered from Wesley's jacket pocket at the hospital.

Answer, Ex. 11 (Feb. 2003 Life Prisoner Evaluation) at 1.

**United States District Court**
For the Northern District of California

1       On May 22, 1981, petitioner was found guilty by jury of second degree murder, use

2   of a firearm, and possession of a firearm by an ex-felon.  He was sentenced to fifteen years

3   to life in prison.  Petitioner was received by the California Department of Corrections on

4   June 24, 1981, and began his life term on January 26, 1982.

5       Petitioner appeared before the Board for his fifth subsequent parole consideration

6   hearing on January 30, 2002, and was denied parole for two years.  The Board

7   disapproved its hearing decision, however, due to malfunction of the recording equipment

8   and ordered a rehearing.  Petition Ex. D.  On February 26, 2003, the Board held the parole

9   consideration hearing, at which petitioner was represented by counsel.  At the time of the

10  2003 hearing, petitioner was sixty-four years old and had been in state custody for about

11  twenty-two years. The Board considered petitioner's commitment offense, his prior criminal

12  and social history, and his programming and behavior during imprisonment.  The Board

13  reviewed petitioner's central file and prior transcripts, his progress since his last hearing,

14  any new psychiatric reports, and any other information bearing on his suitability for parole.

15  Answer Ex. 9 at 3.

16      The Board concluded that petitioner was not suitable for parole and denied parole

17  for three years.  The Board first considered that the commitment offense was carried out in

18  a cruel manner with a disregard for human suffering because petitioner, believing the victim

19  had stolen heroin, shot the unarmed victim multiple times as he attempted to escape.

20  Answer Ex. 9 at 65-66.  The Board further considered petitioner's unstable social history

21  and prior criminality, including drug abuse.  *Id.* at 66.  The Board also considered

22  petitioner's escalating pattern of criminal conduct at the time of the commitment offense

23  and his failure to profit from previous attempts to correct his criminality, including juvenile

24  and adult probation, and serving time at the California Youth Authority, in county jail and in

25  state prison on a prior prison term.  *Id.*

26      With regard to institutional behavior, the Board noted that petitioner failed to

27  demonstrate evidence of positive change in prison.  Answer Ex. 9 at 67.  Petitioner

28  received a total of nine "115" serious rule violation reports, including three since his last

United States District Court

For the Northern District of California

1   physical appearance at a parole consideration hearing for refusing to submit to urinalysis,

2   possession of a controlled substance, and contraband.  Answer Ex. 11 at 6.  Petitioner also

3   received a total of six "128" counseling memos, including one since his last appearance at

4   a parole hearing.  *Id.* at 7.

5        The Board also noted that the most recent mental health evaluation dated

6   September 2001 was unfavorable.  Answer Ex. 9 at 67.  The psychiatrist opined that

7   although petitioner would appear to pose a low level of dangerousness based on his age

8   and recent history of good behavior, petitioner presented an above average level of

9   dangerousness because his heroin addiction had never been treated adequately, he did

10  not show an adequate level of commitment to recovery, he had a high risk of relapse, his

11  commitment offense occurred as a direct result of heroin use, and such a relapse upon

12  release would greatly increase the risk that petitioner would commit further violence.

13  Answer Ex. 9 at 37-38; Ex. 13 at 5.  Petitioner's correctional counselor also opined that he

14  would be a moderate risk to the public if released.  Answer Ex. 9 at 69; Ex. 11 at 7.

15       The Board further noted that petitioner did not make substantial plans for release, as

16  the psychiatrist also indicated in his report.  Answer Ex. 9 at 69; Ex. 13 at 4.  If paroled,

17  petitioner planned either to live with a woman who had written him letters in prison for

18  seventeen years, or possibly to live at Delancy Street or the Salvation Army.  Ex. 9 at 22-

19  25, 44-46; Ex. 11 at 7.  None of the possible residences were located in the county where

20  the commitment offense occurred.  Ex. 9 at 23-25.  The Board recommended that if

21  petitioner wanted to develop a multi-optional plan for release, he should submit that plan to

22  the people who would assist him and confirm the plan in their letters of support.  *Id.* at 69.

23  The Board also considered the district attorney's opposition to parole based on petitioner's

24  lifestyle as a heroin addict and his failure to make substantial efforts to deal with his drug

25  addiction while incarcerated.  *Id.* at 50-52, 69.

26       The Board recognized petitioner's positive behavior in prison: working as a receiving

27  and release clerk, completing vocational dry cleaning, participating in Narcotics Anonymous

28  ("NA"), performing in the Arts in Corrections program, and completing basic infectious

3

United States District Court

For the Northern District of California

1    disease training for the inmates' Peer Education Program.  Answer Ex. 9 at 28-31, 48.

2    Despite these accomplishments, the Board determined that the positive aspects of this

3    behavior did not outweigh the factors of unsuitability.  *Id.* at 70-71.  In particular, the Board

4    noted the psychiatrist's comment that petitioner demonstrated only a superficial

5    commitment to recovery from heroin addiction, preferring to play with his band rather than

6    attend NA meetings more regularly.  *Id.* at 38-44.  The Board expressed its concern about

7    petitioner's problem of seeking treatment for heroin addiction and then returning to heroin

8    use.  *Id.* at 25-26, 41-42.  The Board concluded that petitioner should make a sincere

9    attempt to participate in any and all available self-help and therapy programming, get his

10   general education diploma, continue participating in positive activities, and maintain a

11   disciplinary-free record.  *Id.* at 69-72.

12         Following the Board's decision denying parole, petitioner filed an administrative

13   appeal which was denied on October 15, 2003.  Petitioner subsequently filed a petition for

14   a writ of habeas corpus in the Marin County Superior Court, which denied the petition on

15   May 28, 2004.  Answer Ex. 4.  Petitioner filed a habeas petition in the Court of Appeal,

16   which summarily denied the petition on July 14, 2004.  Answer Ex. 6.  The California

17   Supreme Court summarily denied his petition for review on October 13, 2004.  Answer Ex.

18   8.

19         Petitioner timely filed this federal petition for a writ of habeas corpus on October 21,

20   2004.  Respondent answered and petitioner filed a traverse.  The matter is submitted for a

21   decision on the merits.

22                            **STANDARD OF REVIEW**

23         A district court may not grant a petition challenging a state conviction or sentence on

24   the basis of a claim that was reviewed on the merits in state court unless the state court's

25   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

26   unreasonable application of, clearly established Federal law, as determined by the

27   Supreme Court of the United States; or (2) resulted in a decision that was based on an

28   unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, here the opinion of the Marin County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).  Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal court conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.

1   *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*,

2   336 F.3d 848, 853 (9th Cir. 2003).

3                                           **DISCUSSION**

4          As a threshold matter, respondent contends that petitioner has failed to allege that a

5   state court decision was contrary to, or an unreasonable application of, clearly established

6   federal law, and therefore failed to allege a basis for federal habeas relief.  However,

7   petitioner filed this petition on a court-approved form for a petition for a writ of habeas

8   corpus by a person in state custody.  Because petitioner appears pro se, the court liberally

9   construes the petition as one seeking relief pursuant to Section 2254(d).  *See Erickson v.*

10  *Pardus*, __ U.S. ___, 127 S.Ct. 2197, 2200 (2007).

11         Petitioner alleges that the Board's decision denying him parole violated his rights to

12  due process, equal protection, and trial by jury.  None of these claims merits habeas relief.

13  **I.      Due Process in Parole Suitability Determinations**

14         **A.      Liberty Interest in Parole**

15         Respondent contends that California law does not create a liberty interest in parole.

16  However, the Ninth Circuit has held that it does.  *See Sass v. California Board of Prison*

17  *Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No.

18  05-16455 (9th Cir. Feb. 13, 2007).

19         A California prisoner with a sentence of a term of years to life with the possibility of

20  parole has a protected liberty interest in release on parole and therefore a right to due

21  process in the parole suitability proceedings.  *See Sass*, 461 F.3d at 1127-28.  *See also*

22  *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal*

23  *& Corr. Complex*, 442 U.S. 1 (1979).

24         **B.      Some Evidence Standard of Judicial Review**

25         The Ninth Circuit has held that a parole board's decision satisfies the requirements

26  of due process if "some evidence" supports the decision.  *Sass*, 461 F.3d at 1128-29

27  (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v.*

28

United States District Court

For the Northern District of California

*Hill*, 472 U.S. 445, 454-55 (1985)).  Both petitioner and respondent challenge the applicability of the some evidence standard to judicial review of parole board decisions.

### 1.    Petitioner's Contentions

Petitioner argues that by applying the some evidence standard, the state courts applied the wrong standard of review when analyzing the Board's decision.  In Claim One, petitioner contends that section 3041(a) of the California Penal Code,[1] which provides that the Board "shall normally set a parole release date," creates a presumption that a parole date will be set at the hearing, shifting the burden of proof to the state to make a finding "supported by evidence and a statement of reasons that the circumstances of the crime preclude an ability to set a date at that time."  Petition at 3-4.  In Claim Six, petitioner further contends that the "some evidence" standard violates his right to due process by allowing the Board to cite "factors not supported by reliable evidence or devoid of any underlying factual basis to deny parole."  Neither of these claims has merit.  The Ninth Circuit has repeatedly held that the some evidence standard set forth in *Hill* applies to federal habeas review of state parole suitability determinations.  *See Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc denied*, 506 F.3d 951 (9th Cir. 2007); *Sass*, 461 F.3d at 1128-29.  Thus, the state courts applied clearly established federal law by applying the some evidence standard to the Board's decision to deny petitioner parole.

### 2.    Respondent's Contentions

Respondent contends that even if petitioner has a liberty interest in parole, the some evidence standard does not apply to parole suitability determinations, and suggests that an inmate is entitled to only minimal protections to satisfy due process in a parole proceeding.

---

[1]

Section 3041(a) provides in part as follows:

One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5.

Cal. Penal Code § 3041(a).

United States District Court

For the Northern District of California

1    Citing *Greenholtz*, Respondent contends that due process in state parole procedures is

2    satisfied if they afford the inmate an opportunity to be heard, and a decision informing him

3    why he did not qualify for parole release.  Respondent further argues that the some

4    evidence standard articulated in *Hill* applies to prison disciplinary hearings, and that less

5    process is due in parole hearings.

6        The Ninth Circuit has rejected the contention that the some evidence standard is not

7    clearly established in the parole context.  In *Sass*, the Ninth Circuit explained that "although

8    *Hill* involved the accumulation of good time credits instead of a parole denial, the some

9    evidence standard applies in both situations because 'both directly affect the duration of the

10   prison term.'" 461 F.3d at 1128 (quoting *Jancsek v. Oregon Board of Parole*, 833 F.2d

11   1389, 1390 (9th Cir. 1987)).  "To determine whether the some evidence standard is met

12   'does not require examination of the entire record, independent assessment of the

13   credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is

14   whether there is any evidence in the record that could support the conclusion reached'" by

15   the parole board.  *Id.* (quoting *Hill*, 472 U.S. at 455-56).  The "some evidence standard is

16   minimal, and assures that 'the record is not so devoid of evidence that the findings of the

17   . . . board were without support or otherwise arbitrary.'"  *Id.* at 1129 (quoting *Hill*, 472 U.S.

18   at 457).  The some evidence standard of *Superintendent v. Hill* is clearly established law in

19   the context of parole denial for purposes of § 2254(d).  *Sass*, 461 F.3d at 1129.

20       **C.    Superior Court's Application of Some Evidence Standard**

21       In denying habeas relief, the Superior Court considered "'whether some evidence in

22   the record before the Board supports the decision to deny parole, based upon the factors

23   specified by statute and regulation.'"  *In the Matter of Juan Navaerette*, No. SC132804A, slip

24   op. at 2 (Marin Co. Super. Ct. May 28, 2004) (citing *In re Rosenkrantz*, 29 Cal. 4th 616, 658

25   (2002)).

26       The Superior Court found that the Board relied on the following factors to deny

27   parole:

28

1

2

3

4

5

6

7

8

9

10

11

12

> [T]he first was the Board's conclusion that the crime was committed in a, "cruel manner with a disregard for human suffering." The *Rosenkrantz* court has noted that, "the nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." [29 Cal. 4th] at p. 682. In the instant case, the Board considered petitioner's confrontation with the victim over drugs, and his firing multiple times at the victim, ". . . even as the victim attempted to duck and/or run away from the scene." The Board expressed other concerns about the petitioner's history, including his history with drugs, an escalating pattern of criminal conduct at the time of the crime, and misconduct during incarceration, including three additional conduct violations since his last parole consideration hearing. (See the February 2003, "Life Prisoner Evaluation" at pages 4-7 re "Custody History.") Although petitioner complains that the Board cannot use past substance abuse as a basis for refusing to parole a prisoner, the fact that the more recent custodial violations involved drugs would seem to be an appropriate basis for the Board's actions. In fact, petitioner cites to the Mental Health Evaluation for his September 2001 Lifer Hearing, a document in which Dr. Furman comments about the lack of adequate treatment for petitioner's heroin addiction and predicts that, ". . . a relapse upon release would greatly increase the risk that Mr. Naeverette [sic] would commit further violence." In all, this court must conclude that there was "some evidence" to support the Board's refusal to find petitioner suitable for parole. *Rosenkrantz, supra.* at p. 658.

13

*In the Matter of Juan Navaerette*, slip op. at 2-3 (citations omitted in original).

14

15

16

17

18

19

In Claim Four, petitioner challenges the state court's application of the some evidence standard, arguing that there is no evidence in the record that he currently poses a risk to public safety. In Claim Seven, petitioner challenges the Board's consideration of his history of substance abuse as a basis for denying parole. Neither of these claims merits relief in light of the findings of the Board constituting some evidence to support their determination that petitioner was not suitable for parole.

20

21

22

23

24

25

26

27

28

In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003)). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454, 105 S.Ct. 2768." *Id.* The Ninth Circuit has determined that under California law,

United States District Court

For the Northern District of California

1  "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed

2  suitable for parole based on the 'circumstances tending to show unsuitability' and the

3  'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit.15 § 2402(c)-

4  (d)." *Id.*

5       Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria

6  for determining whether an inmate is suitable for release on parole.  The circumstances

7  tending to show that a prisoner is unsuitable include the following: (1) the commitment

8  offense, where the offense was committed in "an especially heinous, atrocious or cruel

9  manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or

10 tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a

11 lengthy history of severe mental problems related to the offense;" and (6) "serious

12 misconduct in prison or jail."  Cal. Code. Regs., tit. 15 § 2402(c).  The circumstances

13 tending to show that a prisoner is suitable for parole include the following: (1) the prisoner

14 has no juvenile record; (2) the prisoner has experienced reasonably stable relationships

15 with others; (3) the prisoner has shown remorse; . . . (6) the prisoner lacks any significant

16 history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the

17 prisoner "has made realistic plans for release or has developed marketable skills that can

18 be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to

19 function within the law upon release."  Cal. Code. Regs., tit. 15 § 2402(d).

20            **1.    Some Evidence**

21       In support of his argument that there was not "some evidence" that he was

22 unsuitable for parole, petitioner contends that the Board violated his right to due process by

23 relying on the commitment offense without explaining its relationship to his current

24 dangerousness, that he did not pose a risk of danger to public safety, and that he

25 demonstrated positive change during incarceration.  With respect to the commitment

26 offense, the Board first considered that petitioner confronted the victim over drugs, and

27 fired multiple times at the victim even as the victim tried to escape.  The Superior Court

28 determined that the Board did not rely solely on the commitment offense, which it found

United States District Court

For the Northern District of California

1   was committed in a "cruel manner with a disregard for human suffering," to find petitioner

2   unsuitable for parole.  The Superior Court found that the Board also relied on several other

3   factors, including petitioner's history of drug abuse, his escalating pattern of criminal

4   conduct, and his misconduct involving drugs during incarceration.  *In the Matter of Juan*

5   *Navaerette*, slip op. at 2-3.  In particular, the Superior Court noted the evaluating

6   psychiatrist's prediction, based on petitioner's high risk of relapse in heroin use, that a

7   relapse upon release would greatly increase the risk of committing  further violence.  *Id.* at

8   3.  The Superior Court concluded that these factors constituted "some evidence" to support

9   the Board's decision.  *Id.*

10      The transcript of the parole hearing also reflects that the Board considered the

11  chronos that petitioner supplied to the Board concerning his positive behavior during

12  incarceration, including his participation in the Arts in Corrections program, his attendance

13  at NA meetings, and completion of basic infectious disease training.  Answer Ex. 9 at 29-

14  30.  However, the Board expressed its concern that petitioner was not putting forth the

15  effort to rehabilitate himself to become suitable for parole, such as attending NA meetings

16  regularly, in light of his rule violation reports for possession of contraband, drug use and

17  refusal of urinalysis.  *Id.* at 58-60.  The gravity of petitioner's commitment offense in

18  combination with evidence of his prior criminal history and his behavior during incarceration

19  constitutes some evidence to support the Board's decision.  *See Sass*, 461 F.3d at 1129.

20      The state courts' denial of this claim is neither contrary to, nor an unreasonable

21  application of, clearly established federal law.

22                    **2.    Substance Abuse**

23      In Claim Seven, petitioner challenges the Board's reliance on his prior history of drug

24  abuse as discriminatory.  He claims that his prior heroin addiction is a disability protected

25  by the Americans with Disabilities Act, and that he cannot obtain proper treatment for his

26  addiction while incarcerated.  He contends that the Board may impose special conditions

27  on his release, such as requiring him to enroll in a treatment facility, but

28

United States District Court

For the Northern District of California

1     may not deny him parole on the basis of his prior addiction. Petitioner cites no Supreme

2     Court authority supporting this claim for habeas relief.

3         Applying the some evidence standard, petitioner's history of heroin addiction was

4     considered as evidence that his release unreasonably would endanger public safety. The

5     Board found evidence that petitioner had not been adequately treated for his drug

6     addiction, that he was not committed to attending NA meetings, and that he had received

7     three drug-related rules violations reports since his last appearance at a parole hearing.

8     *Cf. In re Smith*, 109 Cal. App. 4th 489, 505 (2003) (prior addiction is not appropriate

9     consideration for parole suitability where there is no evidence that prisoner is presently

10    addicted to drugs). Furthermore, the Board considered the evaluating psychiatrist's opinion

11    that petitioner had a high risk of relapse, and that relapse upon release "would greatly

12    increase the risk" that petitioner would commit further violence. Answer Ex. 13 at 5. The

13    state courts' denial of this claim was neither contrary to, nor an unreasonable application of,

14    clearly established federal law.

15              **3.**      **Juvenile Offenses**

16         In his traverse, petitioner challenges the Board's consideration of his juvenile arrests

17    for nonviolent offenses, suggesting that they were not proper factors to be considered by

18    the Board. At the parole hearing, petitioner's attorney argued similarly that the Board

19    should be most concerned with violence and that petitioner's juvenile record demonstrated

20    theft and drug crimes, but did not reflect assaultive behavior or other violent activity.

21    Answer Ex. 9 at 60-61.

22         The regulations setting forth the suitability criteria provide that a previous record of

23    violence tends to show unsuitability, whereas the absence of a juvenile record supports a

24    finding of suitability. Cal. Code. Regs., tit. 15 § 2402(c) and (d). The Board did not rely

25    solely on petitioner's juvenile record to determine unsuitability, but considered it in the

26    context of "an extensive history of criminality and misconduct" and "an escalating pattern of

27    criminal conduct and violence." Answer Ex. 9 at 41, 44. The Board also considered

28    petitioner's two prior commitments to the Youth Authority as evidence that petitioner failed

United States District Court
For the Northern District of California

1   to profit from society's previous attempts to correct his criminality.  Petitioner has not

2   demonstrated that the Board's consideration of his juvenile record violated his right to due

3   process.  The claim is therefore denied.

4   **D.      Failure to Set Release Date**

5      In Claims Two and Three, petitioner contends that the Board denied him due

6   process by failing to set a term of years and set his release date, citing section 3041 of the

7   California Penal Code which compels the Board to "normally set a parole release date" one

8   year prior to an inmate's minimum release date.  Petitioner further argues that the Board

9   ignored "the existence and purpose of the matrix when considering whether a crime is

10  'especially, heinous, atrocious or cruel.'" Petition at 7.  Petitioner appears to refer to title

11  fifteen, section 2403, of the California Code of Regulations, which sets forth a matrix of

12  base terms for second degree murder.  Those regulations provide in part: "The panel shall

13  set a base term for each life prisoner who is found suitable for parole. The base term shall

14  be established solely on the gravity of the base crime, taking into account all of the

15  circumstances of that crime."  Cal. Code Regs. tit.15, § 2403.

16     In denying these claims, the Superior Court held that "within Title 15, the regulations

17  require the Board to first determine whether a prisoner is suitable for parole and set a date

18  for parole only when found suitable."  *In the Matter of Juan Navaerette*, slip op. at 3-4.  It

19  has long been established under state law that the suitability determination precedes any

20  effort to calculate a parole release date.  *See In re Dannenberg*, 34 Cal. 4th 1061, 1080,

21  *cert. denied*, 546 U.S. 844 (2005).  In *Dannenberg*, the California Supreme Court held that

22  Section 3041 does not require the Board to set a term of years for prisoners sentenced to

23  indeterminate terms.  *Id.* at 1082-84.  That is not required until the Board finds the prisoner

24  suitable for parole.  *Id.*  Because the Board determined that petitioner was not suitable for

25  parole, the Board was not required to set a parole release date or apply the matrix of base

26  terms.  *See Irons*, 505 F.3d at 851 n.3.  The state courts' denial of these claims was neither

27  contrary to, nor an unreasonable application of, clearly established federal law.

28

United States District Court
For the Northern District of California

1

### E.    Comparison to Other Offenses

2     In Claim Five, petitioner contends that the Board violated due process by finding the

3 commitment offense to be particularly cruel and egregious without comparing it to the

4 severity of other murders.  He contends that the Board should be required to consider the

5 amount of time he has served on second degree murder based on the relative severity of

6 the crime.  He further argues that the Board's refusal to set a release date results in the ex

7 post facto imposition of a twenty-five to life sentence for first degree murder, which is

8 disproportionate to his conviction and sentence for second degree murder.

9     Because the maximum sentence for second degree murder is life in prison, it is

10 impossible for the Board to extend petitioner's sentence beyond that term.  This claim is

11 therefore denied.

12     Petitioner also seeks an evidentiary hearing to substantiate this claim.  The court

13 shall not hold an evidentiary hearing on a habeas claim without a showing that "the claim

14 relies on (I) a new rule of constitutional law, made retroactive to cases on collateral review

15 by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could

16 not have been previously discovered through the exercise of due diligence;" and

17 that "the facts underlying the claim would be sufficient to establish by clear and convincing

18 evidence that but for constitutional error, no reasonable factfinder would have found the

19 applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).  For failure to meet

20 these statutory requirements, petitioner's request for an evidentiary hearing is denied.

21 ## II.    Equal Protection Claims

22     Petitioner challenges the Board's decision denying him parole as violating his right to

23 equal protection because the Board failed to set a term uniform to offenses of similar

24 gravity and magnitude, resulting in a sentence longer than that prescribed for similar crimes

25 of second degree murder.  *See* Petition, Claims 1-5.  Petitioner further contends that the

26 Board is systematically biased because it denies parole to approximately ninety-eight

27 percent of inmates, and routinely denies parole "without any underlying evidentiary basis to

28 find inmates unsuitable for parole."  Petition, Claims 1, 2.

14

United States District Court
For the Northern District of California

1       The Equal Protection Clause of the Fourteenth Amendment commands that "all

2    persons similarly situated should be treated alike."  *City of Cleburne v Cleburne Living*

3    *Center*, 473 U.S. 432, 439 (1985).  In order to prevail on this claim, petitioner must

4    demonstrate that similarly situated prisoners have been released on parole sooner than

5    him, and that any disparate or unequal treatment is the result of invidiousness or

6    illegitimacy of the statutory scheme.  *See McQueary v. Blodgett*, 924 F.2d 829, 835 (9th

7    Cir.1991).  "[I]t is a 'settled rule that the Fourteenth Amendment guarantees equal laws, not

8    equal results.'"  *Id.* (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 273 (1979)).  On an

9    equal protection challenge, parole considerations require only a rational relationship to

10   legitimate state interests.  *McGinnis v. Royster*, 410 U.S. 263, 270 (1973).

11      California's parole scheme requires that parole suitability be determined "*in each*

12   *discrete case* by considering the dangerous implications of a life-maximum prisoner's crime

13   individually."  *Dannenberg*, 34 Cal. 4th at 1071 (emphasis in original).  "While the Board

14   must point to factors beyond the minimum elements of the crime for which the inmate was

15   committed, it need engage in no further comparative analysis before concluding that the

16   particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's

17   release."  *Id.*  "The Constitution permits qualitative differences in meting out punishments

18   and there is no requirement that two persons convicted of the same offense receive

19   identical sentences."  *Williams v. Illinois*, 399 U.S. 235, 243 (1970).

20      Rejecting petitioner's argument that the Board took an arbitrary approach to his

21   case, the Superior Court determined that Board denied parole pursuant to an individualized

22   consideration of petitioner's suitability.  *See In the Matter of Juan Navaerette*, slip op. at 5.

23   The record shows that the Board reviewed the evidence and discussed it with petitioner

24   and his attorney before announcing its decision.  *See* Answer Ex. 9 at 65-72.  The Board's

25   decision explains the facts it relied upon in finding him not suitable for parole.  *Id.*  Both

26   these factors tend to negate the accusation of bias, and petitioner has not provided any

27   evidence that would show otherwise.  Furthermore, petitioner has not alleged facts

28   sufficient to establish a prima facie case of a cognizable equal protection claim.  The state

1    courts' rejection of this claim was not contrary to, nor an unreasonable application of,

2    clearly-established Supreme Court authority.

3    **III.     Three-Year Denial of Parole**

4            **A.     Due Process**

5            In Claim Eight, petitioner contends that the Board issued a two-year denial at the

6    2002 hearing, and that on rehearing in 2003, the Board acted in an arbitrary and capricious

7    manner by denying parole for three years.  The court construes this argument as a due

8    process challenge to the three-year denial.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

9            The Superior Court addressed petitioner's claim that the Board acted arbitrarily

10   because "the 2002 Board had found cause for a two-year denial and [petitioner] contends

11   that nothing had changed when the 2003 Board issued its three-year denial."  In denying

12   the claim for habeas relief, the Superior Court found as follows:

13           the Board entered into the evaluation process again and examined the
             petitioner again before concluding that he would need a three-year period to
14           "become and remain disciplinary-free . . . ."  As part of that process, the
             Board requested him to have a new psychological evaluation and to obtain
15           his GED, requests which had not been made by the 2002 Board.  Although
             there is a subjective aspect to the Board's scheduling determination, this
16           court cannot conclude that there was no logic behind the Board's decision to
             rehear the case in three years or that it was an "arbitrary" decision.
17

18   *In the Matter of Juan Navaerette*, slip op. at 5.

19           Petitioner fails to demonstrate that the Board's particularized findings and

20   recommendations support his allegation that the Board made an arbitrary decision to deny

21   parole for three years.  Reviewing an amendment to the California Penal Code that allowed

22   the Board to decrease the frequency of parole, the Supreme Court held that "the Board

23   retains the authority to tailor the frequency of subsequent suitability hearings to the

24   particular circumstances of the individual prisoner.  The default requirement is an annual

25   hearing, but the Board may defer the next hearing up to two years more depending on the

26   circumstances.  Cal. Penal Code Ann. § 3041.5(b)(2) (West 1982)."  *California Department*

27   *of Corrections v. Morales*, 514 U.S. 499, 511 (1995).  The Board's decision to deny

28   petitioner parole for three years was based, in part, on its recommendations that he remain

United States District Court
For the Northern District of California

16

1   free of discipline, that he commit more fully to treating his drug addiction, that he receive

2   another mental health evaluation and that he obtain his GED.  These particularized findings

3   do not demonstrate an arbitrary and capricious decision to deny parole for a three-year,

4   rather than two-year, period.  Petitioner's due process claim challenging his three-year

5   denial is therefore denied.

6        **B.    Right to Jury Trial**

7        In Claim Eight, petitioner contends that by considering factors that were not

8   submitted to a jury to deny parole and extend his sentence, the Board violated his right to

9   have a jury determine beyond a reasonable doubt all facts legally essential to his sentence.

10  Petitioner relies on the line of cases following *Apprendi v. New Jersey*, 530 U.S. 466, 490

11  (2000), where the Supreme Court held that "[o]ther than the fact of a prior conviction, any

12  fact that increases the penalty for a crime beyond the prescribed statutory maximum must

13  be submitted to a jury, and proved beyond a reasonable doubt."  The relevant statutory

14  maximum "is not the maximum sentence a judge may impose after finding additional facts,

15  but the maximum he may impose *without* any additional findings."  *Blakely v. Washington*,

16  542 U.S. 296, 303-04 (2004) (applying *Apprendi* to hold that a state trial judge violated the

17  defendant's Sixth Amendment right to a trial by jury by extending his sentence beyond the

18  statutory maximum based on factual determinations that were not submitted to a jury).

19       The statutory maximum for petitioner's crime, murder in the second degree, is life

20  imprisonment.  Cal. Penal Code § 190(a).  No additional facts must be found beyond those

21  which were found by the jury at petitioner's trial in order for him to be imprisoned for life.

22  Petitioner has no right to a jury trial in connection with parole determinations before the

23  expiration of his life sentence.  *See Blakely*, 542 U.S. at 308-09 ("indeterminate schemes

24  involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those

25  facts he deems important to the exercise of his sentencing discretion").  This claim is

26  therefore denied.

27

28

**United States District Court**
For the Northern District of California

17

<strong>United States District Court</strong><br>For the Northern District of California

1

**CONCLUSION**

2      Based on the foregoing, the petition for a writ of habeas corpus is DENIED.  The

3 Clerk of the Court shall close the file.

4      **IT IS SO ORDERED.**

5

6 Dated:  May 27, 2008.

7                                                                                   

8                                        PHYLLIS J. HAMILTON
                                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 G:\PRO-SE\PJH\HC.04\NAVAERETTE4457.deny.wpd

25

26

27

28